THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
XAVIER D. WILLIAMS, Defendant-Appellant.

Third District   No. 3—87—0760

Opinion filed December 30, 1988.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Masters, State's Attorney, of Joliet (Walter P. Hehner, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Defendant Xavier Williams was indicted, tried before a jury, and convicted of the offense of felony murder. He was sentenced to 35 years in prison. On direct appeal this court affirmed the conviction and sentence. (*People v. Williams* (1985), 136 Ill. App. 3d 126, 483 N.E.2d 306.) Subsequently the United States Supreme Court granted *certiorari*, vacated the conviction, and remanded to this court for further consideration of the issue of racial discrimination in the selection of the jury. Defendant, who is black, established that the prosecutor used peremptory challenges to exclude the only three blacks who were considered for the jury. Under *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, the use of peremptory challenges to exclude members of the defendant's race from the jury can establish a *prima facie* case of purposeful discrimination, and once a *prima facie* case is established, the burden is on the State to come forward with racially neutral reasons for the use of challenges. 476 U.S. at 100, 90 L. Ed. 2d at 90, 106 S. Ct. at 1725.

Upon remand from the Supreme Court, we sent this cause back to the trial court to determine whether defendant had established a *prima facie* case of discrimination pursuant to *Batson v. Kentucky*. (*People v. Williams* (1987), 156 Ill. App. 3d 560, 509 N.E.2d 782.) The trial court conducted a hearing at which it was shown once again that the only black jurors (three in all) who were examined were excused by the State's peremptory challenges, that in this case the black defendant had called a particular cab company so that the driver he intended to rob and kill would be white, and that the circumstances of the case gave rise to an inference that the peremptory challenges were used to exclude jurors on the basis of race. The trial court ruled

that defendant had established a *prima facie* case of purposeful discrimination.

At the hearing the three challenged jurors were described as follows: Mrs. Berry was married, had one child, lived in University Park, and worked for the Private Industry Council, where she helped the unemployed obtain jobs. Mr. Britton was separated, had one child, lived in Bolingbrook, and worked for the board of education. Mr. Churchill was married, had three children, lived in Joliet, and worked at Amoco Chemical.

The State's Attorney stated that Mr. Britton had been excused because he had a civil judgment against him and because his brother had been killed during a burglary several years earlier. Defendant does not argue on appeal that this reason was pretextual. The reason given for excusing Mr. Churchill was because he lived within one or two blocks of the place where the offense took place, which was in a "gang area." Although the offense was not gang related, defendant and a codefendant were in fact members of street gangs in that area. The prosecutor also stated that he was concerned about Mr. Churchill's reaction to a transsexual witness who lived in the same area. As to Mrs. Berry, she worked in the vicinity occupied by defendant's gang and some gang members seek employment through the Private Industry Council. The prosecutor was also concerned with what Mrs. Berry said on her questionnaire—that she would have difficulty sitting on the jury because of her work, and he thought that she did not want to serve. Also, she indicated on her questionnaire that she had served on a jury in Cook County at one time, but during *voir dire* she said she had never served on a jury.

After the State concluded its explanation, defense counsel attempted to call Mrs. Berry as a witness. However, the trial court ruled that defendant could not present evidence but that the court would listen to defendant's arguments. Defense counsel argued that the prospective jurors' proximity to areas where gangs operated was not related to this case and was pretextual. Counsel further stated that Mrs. Berry would testify that she had wanted to be a juror and that she knew of no reasons why she should not have been accepted.

The trial court ruled that the State had provided sufficient neutral reasons for the peremptory challenges. The judgment of conviction and sentence were reinstated, and defendant has appealed from that ruling.

On appeal, two issues are raised: (1) Did the State establish neutral reasons for its peremptory challenges? (2) Was defendant entitled to present rebuttal evidence at the *Batson* hearing?

■■ ■ Looking first at the procedural issue, in *Batson* the Supreme Court held that the defendant must establish a *prima facie* case of purposeful discrimination in the selection of the jury and that discrimination may be established solely on evidence concerning the prosecutor's exercise of peremptory challenges. Then the prosecutor must articulate a neutral explanation related to this particular case. The majority in *Batson* expressly declined to formulate particular procedures to be followed, leaving that to the discretion of the trial court in each case.

Since the *Batson* decision, questions concerning particular procedures have been considered in a number of Federal cases. In the Ninth Circuit Court of Appeals, two cases have been decided in which the defendant raised the issue of racial discrimination in the use of peremptory challenges at the time the jury was selected and before the trial began. (*United States v. Thompson* (9th Cir. 1987), 827 F.2d 1254; *United States v. Alcantar* (9th Cir. 1987), 832 F.2d 1175.) In both cases, the trial court heard the prosecutor's reasons during an *ex parte* conference at which defense counsel was not present, and in both cases the trial court ruled that the prosecutor had provided satisfactory neutral reasons for the challenges.

In one of those cases, *United States v. Thompson*, the reviewing court ruled that trial judges have broad discretion to fashion procedures to be used in each case before them subject to the defendant's constitutional rights. The court also said that criminal defendants have a fundamental right to an adversary proceeding under our system of justice and then observed that, when racial discrimination in selecting a jury has been claimed, the judge may determine the scope of the proceeding, its duration, and the depth of inquiry. The court in *Thompson* ruled that defense counsel should be present and have an opportunity to respond to the prosecution's reasons unless those reasons were related to a trial strategy which would be detrimental to the State's case if revealed with opposing counsel present. The cause was then remanded for an adversary hearing on the prosecution's motive in exercising its peremptory challenges to remove all four blacks from the venire. Accord *United States v. Alcantar* (9th Cir. 1987), 832 F.2d 1175.

The Fourth and Seventh Circuits have both held that there is no absolute right to an evidentiary hearing or to an adversarial proceeding under *United States v. Batson*. In *United States v. Tucker* (7th Cir. 1988), 836 F.2d 334, the court stated that adversarial hearings are the appropriate method for handling most *Batson*-type disputes and should be utilized whenever possible, but the decision is one to be

made by the trial judge in each particular case. Accord *United States v. Tindle* (4th Cir. 1988), 860 F.2d 125.

When the claim of racial discrimination is raised before trial begins, the question of conducting a "trial within a trial" presents problems which do not concern us in this case, where the issue of purposeful discrimination was not raised until after the trial was completed. Here there is no question of disclosure of strategy or delay of trial. That being the case, the trial court would not have been justified in refusing to permit an adversary hearing. The procedure which was used here was substantially the same as that subsequently accepted by the Illinois Supreme Court in *People v. McDonald* (1988), 125 Ill. 2d 182.

■ Defendant contends that the trial court erred in refusing to permit him to present evidence at the hearing. The State claims that defendant waived this issue by not formally objecting to the court's ruling, but we conclude that the court's ruling as to the procedure to be followed is subject to review.

Defendant proposed to call Mrs. Berry to testify that she had in fact wanted to serve on the jury, in contradiction to the prosecutor's statement that he felt she did not want to serve. The trial court stated that the use of peremptory challenges is a subjective judgment call, unlike a challenge for cause. Thus, whether or not the prospective juror in fact wanted to be on the jury, the prosecutor subjectively felt she was unwilling to serve, and those feelings cannot be denied except by evidence that the prosecutor had expressed feelings to the contrary.

In *United States v. Thompson* (9th Cir. 1987), 827 F.2d 1254, the court stated that defense counsel can perform two crucial functions in an adversary proceeding involving a potential *Batson* violation. First, counsel may point out that the government's stated reasons indicate bad faith. For example, if the reason advanced for excluding a black juror was that he lived in defendant's neighborhood, that reason would seem legitimate unless a white juror from the same neighborhood was accepted. Just such a situation arose in *People v. McDonald,* where 16 black jurors were excluded by peremptory challenges. According to the prosecutor, one was excluded because he was a young single male. His age was 34, while an 18-year-old single male who was white was accepted. Similarly, the prosecutor said that he excluded several black women because they were mothers of large families of five or more children, but he did not exclude a white woman who was the mother of five. The prosecutor cited "advanced age" as the reason for excluding a 63-year-old black juror, but he accepted a 67-year-

old white juror. In that case the trial court found purposeful discrimination, and the Illinois Supreme Court affirmed, stating:

"We have reviewed the prosecutor's proffered explanations for exercising his peremptory challenges and find them inadequate to rebut the *prima facie* case, in light of the characteristics of the white jurors whom the prosecutor accepted." 125 Ill. 2d at 199.

A second function which defense counsel can perform at an adversary hearing is to preserve for the record crucial facts bearing on the trial judge's decision. Where the prosecutor's reasons are given to the court off the record, it is impossible to review the trial court's decision on appeal. As the court in *United States v. Thompson* said: "Defense counsel could say things that might persuade the [trial] judge or, failing that, he could say things that might persuade us." 827 F.2d at 1261.

In the case at bar, defendant advances no arguments indicating that any white jurors were accepted who had the same characteristics as the excluded black jurors, and defense counsel did not attempt to call any witnesses to provide such evidence. We hold, therefore, that the trial court did not abuse its discretion in refusing to permit defendant to call Mrs. Berry as a witness at the *Batson* hearing.

By so ruling, we must not be understood as saying that an evidentiary hearing would never be appropriate or that a defendant should never be allowed to call a witness. In each case involving a *Batson* issue, the trial court should utilize those procedures best suited to the special circumstances of the case, including, where appropriate, an evidentiary hearing. See, *e.g., People v. McDonald* (1988), 125 Ill. 2d 182; *People v. Hooper* (1987), 118 Ill. 2d 244.

■ Finally, defendant contends that the State's explanation was pretextual in that the jurors' connection with a "gang" area had no bearing on this case since gang membership was not mentioned at trial and was not an issue in the case. Defendant admits that defendant Williams and his codefendant were members of gangs which operated in the area where one juror lived and another juror worked. Common life experience teaches us that gang members often protect one another, and consequently the implication that the jurors' safety might be in question is legitimate in this case. Furthermore, experience with criminal trials teaches that a juror's daily association in the neighborhood where the crime occurred would be a common reason for a peremptory challenge with or without gang activities in the area. (See *People v. Carradine* (1972), 52 Ill. 2d 231, 287 N.E.2d 670 (witness to homicide preferred six months of imprisonment for con-

tempt of court to anticipated consequences to her family for testifying against members of local Blackstone Rangers gang).) Consequently, we conclude that the trial court's finding that the State's reasons were racially neutral was not against the manifest weight of the evidence.

The judgment of the trial court is affirmed.

Affirmed.

STOUDER, P.J., and HEIPLE, J., concur.