Xavier WILLIAMS, Petitioner–
Appellant,

v.

James R. CHRANS, et al., Respondents–
Appellees.

No. 91–1290.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 6, 1991.
Decided March 13, 1992.

---

Robert Agostinelli (argued), Office of the State Appellate Defender, Ottawa, Ill., for petitioner-appellant.

Bradley P. Halloran (argued), Office of the Atty. Gen., Chicago, Ill., for respondents-appellees.

Before CUMMINGS and RIPPLE, Circuit Judges, and WILL, Senior District Judge.*

WILL, Senior District Judge.

Xavier Williams was convicted of felony murder in the Circuit Court of Will County, Illinois. His conviction was affirmed on direct appeal. *People v. Williams*, 136 Ill. App.3d 126, 91 Ill.Dec. 24, 483 N.E.2d 306, *appeal denied*, 111 Ill.2d 564, 92 Ill.Dec. 849, 485 N.E.2d 1092 (1985). The United States Supreme Court granted certiorari, 479 U.S. 1075, 107 S.Ct. 1268, 94 L.Ed.2d 129 (1987), and remanded to the state courts for further consideration of Williams' claim that the prosecution's use of peremptory challenges to strike black prospective jurors violated his federal constitutional rights.[1] The state courts let the conviction stand. 177 Ill.App.3d 787, 127 Ill.Dec. 215, 532 N.E.2d 1044 (1988), *appeal denied*, 125 Ill.2d 573, 130 Ill.Dec. 488, 537 N.E.2d 817 (1989). Williams then petitioned for habeas relief in district court. The district court denied the petition. We affirm.

---

* The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

1. The Court remanded for further consideration in light of *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). *Griffith* held that the requirements of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), applied to cases pending on direct appeal.

## I.

Xavier Williams, along with a co-defendant, was convicted of the felony murder of a white taxicab driver. The evidence at trial showed that the defendants, who were both black, had called the victim's cab company because it was known to have white drivers. The driver was robbed and then shot by Williams' co-defendant. Williams was sentenced to thirty-five years in prison.

In support of his habeas petition, Williams contends that the prosecution used peremptory challenges to strike two black venirepersons because of their race, leaving him to be tried by an all-white jury. A defendant establishes a prima facie case of discrimination based on the prosecution's use of peremptory challenges "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Batson v. Kentucky,* 476 U.S. 79, 94, 106 S.Ct. 1712, 1721, 90 L.Ed.2d 69 (1986). Once a defendant has made out a prima facie case, the burden shifts to the prosecution to offer a race-neutral explanation for the exclusion. *Id.* at 98, 106 S.Ct. at 1724. As a final step, the trial court determines whether the defendant has established that there was purposeful discrimination. *See Hernandez v. New York,* —— U.S. ——, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

Following a remand from the state appellate court, 156 Ill.App.3d 560, 109 Ill.Dec. 121, 509 N.E.2d 782 (1987), the trial court held a hearing to determine whether prospective jurors were excluded because of their race. The court found that Williams had established a prima facie case of purposeful discrimination based on the prosecutor's peremptory strikes of two black venirepersons, Irma Berry and James Churchill. Williams raises no claim against the prosecution's strike of a third black venireperson, Roy Britton. All three jurors were part of a single panel of four struck by the state.

The prosecution was then required to explain its strikes of Berry and Churchill. The prosecutor gave three reasons for striking Berry. First, he had a feeling that she did not want to serve as a juror because she stated on her juror questionnaire that she might have problems serving because of her employment. There was also an inconsistency in a questionnaire answer and her response during voir dire regarding prior jury service. On the questionnaire Berry stated that she had served on a jury previously, but during voir dire said that she had never served.

A final reason offered for excluding Berry was the location and nature of her employment. Berry worked in job placement for the Private Industry Council. Williams was a member of a gang which operated in the same area as the Council. The prosecutor stated that he was concerned that gang members might seek employment through the Private Industry Council.

The prosecution also offered this gang area justification for excluding Mr. Churchill. Churchill lived in the vicinity of the gang's activities. A second ground for striking Churchill was that the location of his residence was also two blocks from the crime scene. During voir dire, however, Churchill indicated that he had no knowledge of the murder, and police had never questioned him about the case.

Williams argues that the prosecution's articulated reasons for striking Berry and Churchill were mere pretexts to exclude them because of their race. The most problematic explanations were that Churchill lived, and Berry worked near the base of operations of Williams' gang. The prosecution offered these reasons even though it did not contend that Williams' offense was gang related, nor did it intend to introduce evidence of Williams' gang involvement. Therefore the jury was never going to be informed about Williams' gang membership.

The basic problem with the prosecution's gang area explanation, even if it had been relevant to the evidence at trial, is obvious. Gangs with black members will frequently operate in areas populated primarily by residents who are also black. Allowing the exclusion of black venirepersons simply because their home or place of work is in a gang area has an enormous potential to

disproportionately exclude black jurors in most cases involving black gang members. Moreover, this rationale, if unscrutinized, is easily subject to abuse. In fact, Williams offered affidavits to the trial court suggesting that the same prosecutors here have articulated a gang area justification to exclude black jurors in other cases involving black defendants.

The disproportionate impact of a prosecutor's criteria for excluding black prospective jurors, however, does not compel a finding that the state's motives were discriminatory. *Hernandez*, 111 S.Ct. at 1867. The effect of the state's proffered reasons for using peremptory strikes is only part of the equation a court may use to assess the credibility of the prosecutor's explanation. *Id.* at 1868. Ultimately, a violation of the equal protection clause is made out by evidence of discriminatory intent. *Id.* at 1866. Nonetheless, courts should be very wary of allowing gang membership to be an acceptable ground for striking jurors, particularly absent any gang involvement in the offense. This reasoning is particularly suspect when black defendants are being tried for an offense against a white victim.

■ *Batson* requires that the prosecution's reasons be "a neutral explanation related to the particular case to be tried." 476 U.S. at 98, 106 S.Ct. at 1724. The justification for exercising a peremptory challenge, however, does not need to be sufficient to justify a challenge for cause in order to be race-neutral. *Id.* at 97, 106 S.Ct. at 1723. Adequate explanations for exercising a peremptory strike may include a prosecutor's "intuitive assumptions that are not fairly quantifiable." *United States v. Williams*, 934 F.2d 847, 850 (7th Cir. 1991).

The trial court concluded that the prosecution had provided legitimate, race-neutral, reasons for excluding Mrs. Berry and Mr. Churchill. We cannot reverse this finding unless the court's determination was clearly erroneous—even if we find it dubious. *Hernandez*, 111 S.Ct. at 1870.

■ The state's reasons were thin, but it was not clear error for the trial court to find that the explanations were based on considerations other than Berry's and Churchill's race. Even absent the gang activity justification, the trial court could reasonably have concluded that a prospective juror's inconsistent answers, hesitancy about jury service or residence near the scene of the crime were specific neutral grounds for using a peremptory strike. Moreover, the state's gang proximity justification, though highly suspect, did not require the trial court to find that the prosecution had intentionally excluded venirepersons because of their race. *Cf. United States v. Briscoe*, 896 F.2d 1476, 1488–89 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990) (peremptory strike of black venireperson who lived near two witnesses was legitimate). Given these considerations, and the deference owed to the trial court, we cannot say on this record that it was clear error to find that the prosecution's reasons were credible.

## II.

■ Williams also challenges the procedures employed by the trial court. After the prosecutor offered his explanations for striking Berry and Churchill, Williams sought to introduce the testimony of Mrs. Berry to show that she was willing to serve on the jury. The court refused to hear this testimony. The court also declined to admit two of three affidavits tendered by defense attorneys which stated that the prosecutors involved in the case had used the gang activity explanation to justify the exclusion of jurors in other trials. At the close of the hearing, the court chose to admit only the affidavit of an attorney representing Williams' co-defendant.

In *Batson*, the Court expressly declined to specify the procedures courts need to follow to determine whether the prosecution has discriminated against potential jurors because of their race. 476 U.S. at 99, 106 S.Ct. at 1724–25. There is disagreement among the circuit courts as to whether it is necessary always to provide an adversary hearing when conducting a *Bat-*

*son* inquiry. *Compare, e.g., United States v. Alcantar,* 897 F.2d 436 (9th Cir.1990) (requiring an adversary hearing) and *United States v. Wilson,* 816 F.2d 421 (8th Cir.1987) (same) *with United States v. Davis,* 809 F.2d 1194 (6th Cir.), *cert. denied,* 483 U.S. 1007, 107 S.Ct. 3234, 97 L.Ed.2d 740 (1987) (refusing to require specific procedures).

Williams argues that he should have been permitted to present rebuttal evidence. In *United States v. Tucker,* 836 F.2d 334, 340 (7th Cir.1988), *cert. denied,* 490 U.S. 1105, 109 S.Ct. 3154, 104 L.Ed.2d 1018 (1989), we held that *"Batson* neither requires rebuttal of the government's reasons by the defense, nor does it forbid a district court to hold an adversarial hearing." *Tucker* upheld a district court's decision to hear ex parte the government's reasons for excluding jurors. Although we noted that an adversarial hearing may be the appropriate approach in most cases, a trial judge has discretion to determine the best procedure to be used in a given case. *Id.*

The state trial court's procedure comports with this court's analysis in *Tucker.* Moreover, in contrast to the procedure upheld in *Tucker,* the state's explanations here were given in the presence of the defense, after which defense counsel was permitted to argue that the prosecution's explanations were pretexts. 177 Ill.App.3d at 789, 127 Ill.Dec. at 216, 532 N.E.2d at 1045. In addition, the court, acting within its discretion, admitted one of the attorney affidavits which allowed it to be aware that the same prosecutors had previously struck jurors based on a gang proximity rationale. *Cf., e.g., United States v. Roan Eagle,* 867 F.2d 436 (8th Cir.), *cert. denied,* 490 U.S. 1028, 109 S.Ct. 1764, 104 L.Ed.2d 199 (1989) (adversarial hearing required but it need not be evidentiary proceeding).

Williams was also not prejudiced by the trial court's failure to hear the testimony of Mrs. Berry. Berry's willingness to serve as a juror, articulated after voir dire had taken place, would not have been probative of whether at the time she was struck from the venire the prosecution sought to exclude her on the basis of her race. The relevant issue is whether, based on what the prosecution knew about a juror at the voir dire, the reasons for striking the juror were race-neutral.

We repeat, as we stated in *Tucker,* that in *most* cases an adversarial hearing is desirable. However, the state court's decision to inquire in open court as to the prosecution's reasons for excluding two jurors, without receiving further evidence from Williams, was within the court's discretion.

This is a very close case which leaves us with considerable unease as to the prosecution's purposes and reasons for striking these jurors, thereby ending up with an all-white jury. Based on the foregoing, however, and the fact that, whatever we might have done had we been the court of first instance, as an appellate court reviewing a habeas claim, we may not substitute our judgment for that of the state court if it is adequately supported by the record, the district court is AFFIRMED.