**Bobby COTTON, Plaintiff,**

v.

**Randall BUSIC, Individually as a police officer of the Indianapolis Police Department, and Richard Windisch, Individually as a Police Officer of the Indianapolis Police Department, Defendants.**

**No. IP 87–1133–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

June 15, 1992.

Michael K. Sutherlin, Indianapolis, Ind., for plaintiff.

Mary Ann G. Oldham, City–County Legal Div., John F. Kautzman, Ruckelshaus Roland Hasbrook & O'Connor, Indianapolis, Ind., for defendants.

## ENTRY ON MOTIONS FOR JNOV AND FOR NEW TRIAL

TINDER, District Judge.

### I. *Introduction*

Bobby Cotton went on a rampage one night in Indianapolis, throwing rocks and creating a disturbance to which two police officers were summoned. No video camera was present that night so it is not possible for this Court to say with absolute certainty what happened next. What is undisputed is that Cotton and the officers engaged in a scuffle which left Cotton with serious bumps and bruises and no left eye.

Eventually, Cotton brought this Section 1983 [1] action alleging that the police officers, Randall Busic and Richard Windisch, used excessive force in arresting him. Cotton sought damages for his injuries.

---

**1.** 42 U.S.C. § 1983.

The jury found no liability on the part of the officers and Cotton now asks this Court to overturn the jury's verdict by entering a judgment notwithstanding the verdict ("JNOV") or in the alternative to grant him a new trial. Cotton asserts three grounds for his twin motions. Each ground is considered below.

## II. *Batson Challenge*

The first ground of Cotton's motions is that the officers' attorneys[2] evidenced a racial animus in striking a prospective black juror, named Gloria Jackson, from the venire with one of the defense's peremptory challenges. After the defendants struck this potential juror, plaintiff's counsel proffered what is commonly referred to as a *Batson* challenge after the leading case of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

In *Batson* the Supreme Court held that a criminal defendant could challenge a government attorney's peremptory challenge to a member of the venire who was also a member of a racial minority by establishing a prima facie case of discrimination. Once a prima facie case is established under *Batson* the burden shifts to the prosecutor who must identify one or more race-neutral reasons for use of the peremptory. The judge must then determine, based on the evidence before the judge and the circumstances surrounding the government attorney's action, whether the race-neutral reason given by the prosecutor is legitimate and is the true reason for the government's use of the peremptory.

Of course, this is a civil case, but the Supreme Court has held that a *Batson* analysis is applicable to peremptory challenges exercised against racial minorities in a civil case. *Edmondson v. Leesville Concrete Co.*, — U.S. —, 111 S.Ct. 2077, 2080, 114 L.Ed.2d 660 (1991).[3] In this case this Court required the officers' counsel to justify their decision to strike Ms. Jackson.

Defense counsel objected that a prima facie case of discrimination had not been made out and that no explanation for their decision to strike Ms. Jackson was, therefore, required. A review of the case law has convinced this Court that defendants' attorneys were correct.

While "[i]t is the striking of a single black juror [or member of another racial minority] for racial reasons that invokes the shelter of the Equal Protection Clause," *United States v. Ferguson*, 935 F.2d 862, 865 (7th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 907, 116 L.Ed.2d 807 (1992), the striking of a single black prospective juror *without more* is not sufficient to establish a prima facie case that the potential juror was struck for racial reasons. *See Batson*, 476 U.S. at 96, 106 S.Ct. at 1723 (litigant making *Batson* challenge must show both the fact that a peremptory was used against a racial minority and that "other relevant circumstances raise an inference" that the peremptory was used for an improper motive).

In this case this Court has found no more than the striking of a single black member of the venire. Ms. Jackson was one of two black individuals on the venire. After Ms. Jackson was removed from the panel the remaining black member of the venire became an alternate juror when defense counsel used the remaining peremptory allotted to it to strike a white individual out of the pool of potential alternates. Thus, this Court concludes that a totality of the relevant facts do not indicate that plaintiff has established a prima facie case of discriminatory purpose in the defendants' use of their peremptory challenges. *See United States v. McAnderson*, 914 F.2d 934, 942 (7th Cir.1990) (no prima facie case where two of four black members of venire were peremptorily stricken).

In addition, this Court has had extensive experience with the Indianapolis City–County Legal Division and has never had cause to suspect that any member of that

---

2. Also referred to in this entry as "the government's attorneys" and, of course, as "defense attorneys."

3. Thus, perhaps this Court should refer to the plaintiff's challenge as an *Edmondson* challenge.

office has taken any action adverse to a racial minority for race-based reasons. *See United States v. Williams,* 934 F.2d 847, 850 (7th Cir.1991) ("a trial judge may take into consideration a prior practice of jury selection made by a particular prosecutor as part of the analysis of the credibility of the prosecutor's reasons for exclusion of venire members"). There simply are no other circumstances existent in this case that could lead this Court to the conclusion that a prima facie case of discriminatory intent was established. Thus, this Court should not have required the defense attorneys in this case to provide reasons for their use of a peremptory challenge against a single black prospective juror.

 Nevertheless, this Court did require defendants' attorneys to make an explanation of their challenge of Ms. Jackson. The explanations given by the officers' attorneys bolster this Court's conclusion that Ms. Jackson was not stricken as a juror for race-based reasons. Defendants' attorneys gave three reasons for their decision. They contended that:

1) the prospective juror had a low paying job and, therefore, might tend to award a higher amount of damages,

2) the prospective juror resided in David Sector which is the same area in which the events in question took place and that the witness might, therefore, tend to rely on her own memory of the location of the events rather than listening to the testimony of the witnesses and that she might be familiar with the police officers that regularly worked in that part of town,[4] and that,

3) the prospective juror's demeanor, body language and some of her expressions made during voir dire led defense counsel to believe that she would be more favorable to plaintiff than to defendants.

This Court found each of the reasons given by the government's attorneys to be credible and did not detect a hint of racial non-neutrality in counsels' decision to exercise a peremptory challenge to prospective juror Jackson. This Court remains convinced that the government's attorneys reasons were truthful. Moreover, this Court can confirm that the tone of Ms. Jackson's responses appeared to indicate a degree of reluctance in doing jury service or perhaps outright animus toward the police officers' case. Accordingly, this Court will not grant a new trial on the basis of plaintiff's *Batson* challenge, and plaintiff's motion on that ground is DENIED.

### III. *Improper Closing Argument*

 Plaintiff's brief accompanying his motion for JNOV and in the alternative for a new trial contains the following description of counsel for defendants' allegedly improper closing argument:

Defendants' closing argument improperly asked the jurors to be persuaded by their sympathy for the defendants, the defendants' families, their financial circumstances and their ability to pay the judgment. Further, the defendants misstated evidence in order to prejudice the jury against the plaintiff. For all the above reasons, the court should award a new trial.

This Court notes that the transcript of the trial reflects that a lunch break was taken between the time that plaintiff made his *Batson* challenge and the time that the Court considered it. Thus, if plaintiff's attorney had sought some minimal cooperation from defense counsel in adducing the reasons for counsel's decision to strike the juror then plaintiff's counsel would have put himself in a position to timely point out any errors in defense counsel's reasoning. Moreover, once plaintiff's counsel heard defense counsel's reasons for striking the juror plaintiff's attorney could have requested a short recess in order to acquire a map of the city. He did not.

---

**4.** Plaintiff noted in his reply brief, filed three months after trial, that the challenged juror's residence was some 21 blocks from the scene of the altercation involved in this case. However, because plaintiff did not produce this evidence until such a late date, at the time of the trial it was reasonable for this Court and defendants' counsel to conclude that a reasonable probability existed that the prospective juror lived close to the location that Cotton was apprehended. *See Williams v. Chrans,* 957 F.2d 487, 491 (7th Cir.1992) ("The relevant issue is whether, *based on what the prosecution knew* about a juror *at the voir dire,* the reasons for striking the juror were race-neutral") (emphasis added).

Plaintiff's Memorandum in Support of Plaintiff's Motion for Judgment (filed October 10, 1991) at 5.

Plaintiff's counsel concedes that during closing argument he did not raise an objection to any of the allegedly improper arguments he now complains of. *See* Reply to Defendants' Response to Plaintiff's Motion for Judgment Notwithstanding the Verdict, or in the Alternative, a New Trial (filed December 24, 1991) at 7. Before this case went to the jury, and not after the jury has returned a verdict,[5] was the time for making such objections.

If counsel had raised his complaints earlier a curative instruction might have been given that would have told the jurors to disregard any improper remark. Instead of timely objecting, plaintiff's counsel, who may have elected not to object for strategic reasons, with the benefit of hindsight now wants this Court to set aside the work of the jury notwithstanding his failure to object. This is clearly not an appropriate case for undoing the work of a properly instructed jury.[6]

Plaintiff's motion for a new trial on the basis of allegedly improper remarks made during defense counsels' closing arguments is DENIED for the failure of plaintiff's counsel to object and because defense counsel's remarks were not, in fact, improper.

## IV. *The weight of the evidence*

Plaintiff contends that he is entitled to a JNOV or at the least a new trial because the weight of the evidence is contrary to the jury's verdict. To the contrary, this was a hotly disputed case with an abundance of evidence presented by the defendants on every point necessary for a judgment in their favor.

Evidence was presented from which a reasonable jury could find that Bobby Cotton was acting in an enraged, aggressive and threatening manner on the night that he was confronted by the officers.[7] There was evidence that Cotton was armed with two hunks of concrete which he initially refused to put down when requested to do so by the officers.

There is no dispute that a scuffle ensued when the officers attempted to arrest and handcuff Cotton. Moreover, George Stephens, the man whom plaintiff refers to as "the only independent witness" to the relevant events, testified that Cotton was the aggressor, that Cotton got one of the officers in a "bear hug" and that Cotton was "strong as hell."

Officer Windisch testified that he observed Cotton going for his gun. While Stephens did not see Cotton going for anybody's gun, the hurried nature of this nighttime struggle did not require the jury to conclude that the officer was not telling the truth. The officers got Cotton to the ground and Stephens testified that Cotton continued to struggle and resist the officers even while he was on the ground.

Based on this evidence this Court is unable to conclude that the jury's verdict was against the weight of the evidence. The officers struck Cotton with a flashlight and a nightstick—brutal stuff—but the evidence is strong that it was a brutal encounter. Nor can this Court conclude that the force used was excessive because of the

---

5. Indeed, as the quoted portion of plaintiff's initial brief in support of his motions reflects, plaintiff's objection to defense counsel's remarks was not raised with any degree of specificity until December 24, 1991—three months after the jury returned its verdict against the plaintiff. Thus, it was not until the day before Christmas, 1991 that plaintiff made his objection to the government's attorneys' remarks in a manner calculated to isolate for this Court the alleged error.

6. Moreover, after reviewing all of the evidence in the case, it is this Court's judgment that defense counsels' arguments did not overstep any appropriate standards and were a fair response to the plaintiff's closing argument.

7. It may be noted that plaintiff Cotton was suffering from paranoid schizophrenia at the time of this incident, and that he had been off of his prescribed medication for a significant period of time before the night in question. He had also consumed alcoholic beverages on the day of the incident. All of these things are factors which may explain his conduct that night and which could properly be considered by the jury in evaluating Cotton's testimony regarding what went on that night.

combination of the sad reality that Bobby Cotton's eye socket was exploded and the fortunate circumstance that the officers were not seriously hurt. A police officer need not suffer brutalizing injury before he inflicts it; rather, the restraint on an officer's use of force is that it must reasonable under the circumstances.

The jury concluded that the officers' use of force was reasonable under the circumstances of their encounter with Bobby Cotton. The weight of the evidence does not point to another conclusion. Accordingly, plaintiff's motions for JNOV and a new trial based on the sufficiency of the evidence are DENIED.

ALL OF WHICH IS ORDERED.