**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Willie Davis BROWN, a/k/a Will**
**Brown, Defendant-Appellant.**

**No. 84–2290.**

United States Court of Appeals,
Tenth Circuit.

April 29, 1987.

Stephen J. Korotash, Asst. U.S. Atty., Oklahoma City, Okl. (William S. Price, U.S. Atty., and Ted A. Richardson, Asst. U.S. Atty., Oklahoma City, Okl., on the brief), for plaintiff-appellee.

Fred Haddad, Fort Lauderdale, Fla., for defendant-appellant.

Before McKAY, SEYMOUR, and MOORE, Circuit Judges.*

JOHN P. MOORE, Circuit Judge.

This case is before us again following the Supreme Court's reversal of our previous judgment. *See United States v. Brown,* 770 F.2d 912 (10th Cir.1985). After holding that the rule announced in *Batson v. Kentucky,* 476 U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), should be applied retroactively to this case, the Court reversed and remanded for further proceedings. *Griffith v. Kentucky,* —— U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). The question presented is whether the record discloses any improper exercise of the government's peremptory challenges of black jurors. We conclude that it does and remand for a new trial.

Of all prospective jurors called in the original venire, there were few blacks. Two of these black veniremen were excused for cause,[1] and the government exercised peremptory challenges to excuse two others over defense objections. Even though the defense contended excusing these jurors denied defendant a representative jury, the court took no action.[2]

With the original venire exhausted without empaneling a jury, the trial court hastily had to assemble another venire. While gathering new panel members for the second venire, the jury clerk received a telephone call from the Assistant United States Attorney prosecuting the case. Precisely what was said in the ensuing conversation is disputed, but the clerk recalled that the prosecutor said, "Don't get any blacks on the jury." Although the clerk paid no attention to the request, she reported the matter to the judge presiding in the trial.

In a chambers hearing held after the presentation of evidence, the court investigated the matter of the prosecutor's call to determine whether action should be taken.[3] After informing those present of the clerk's report, the court listened to a statement by the prosecutor, who was then cross-examined by defense counsel. The jury clerk and the clerk of the court were also examined. The prosecutor admitted telephoning the jury clerk, but stated that he merely asked whether she knew how many black people would be called in the second venire. He then stated he had no racial animosity, but that because of his previous experience with one of the defense counsel, who is black, he thought it prudent to excuse all blacks. He stated:

It wasn't racist on my part to excuse those particular jurors; but I think, in all candidness [sic], I've tried cases with Mr. Porter before, and I think he's a marvelous opponent. He's very good in everything, and he also had a very special appeal to the black people in the community.

And the one trial that I can think that we had together that actually went to trial, Judge Smith got kind of worn out with Mr. Porter and myself and said, "Men, I'm worn out with you two. I want you to take the first twelve jurors and not excuse anybody," which we did. There were six black and six white jurors on that case. It was a robbery, and it appeared to me an open and shut case. The man was caught there with the

* Chief Judge Holloway reassigned this case to the present panel after the deaths of Judges Jean S. Breitenstein and William E. Doyle, two members of the hearing panel which had filed the first opinion.

1. The mother of one had grown up with defense counsel and was a personal friend; the other had been on several bus trips with counsel.

2. In fairness to the trial court, the prosecutor's action was justified under the then current view. *See Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); *United States v. Jenkins,* 701 F.2d 850 (10th Cir.1983).

3. The court subsequently determined action was unwarranted. That decision has nothing to do with our disposition of this case.

purse and the money and everything. We had a hung jury in the case, six to six, along the racial lines.

And so all I'm telling the Court is that I did take into consideration the fact that these people were black and that almost everybody—I would think they [sic] would be an incompetent juror, almost, if they were from this area and didn't know Senator Porter. And I had planned on excusing then if they indicated in any way that they either knew Melvin Porter or knew who he was.

In contrast to this argument is the court's action excusing juror Rosales. During voir dire, Mr. Rosales stated that he had heard speeches by Mr. Porter and that "[Mr. Porter] fights for the people very much...." Mr. Rosales told the court he was "supportive" of Mr. Porter because Mr. Porter had backed legislation that was beneficial to Mr. Rosales. Mr. Rosales was excused for cause without objection. The record contains nothing indicating any of the other jurors challenged by the government were "supportive" of Mr. Porter.

The prosecutor's statement made during the chambers hearing is the only evidence disclosing the reason behind the government's use of its peremptories; nevertheless, in his response to our inquiry, government counsel asserts the record is sufficient to determine whether jurors were excluded on account of race as that term is employed in *Batson*. We must assume, therefore, that no further evidence could be developed to assist us in deciding this issue.[4]

 Our resolution is ordained by *Batson* which states:

Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges "for any reason at all, as long as that reason is related to his view concerning the outcome" of the case to be tried, the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race *or on the assumption that black jurors as*

*a group will be unable impartially to consider the [prosecution's] case against a black defendant.*

*Batson*, 106 S.Ct. at 1718–19 (citations omitted, emphasis added). While this rule interdicts the exercise of peremptory challenges for purely racial reasons, it does not forbid challenges of minority jurors for legitimate reasons tangentially connected with their race.

 Indeed, the concern expressed by the prosecutor is a justifiable reason for exercising a peremptory challenge if it is supported by fact and not surmise. If the voir dire had disclosed an affinity between a potential juror and defense counsel, even if that affinity is linked to race, it is logical to presume defense counsel would have an advantage with that juror. But such a linkage cannot be assumed just because of racial identity. That is what occurred in this case.

When the court concluded its voir dire, counsel were asked if they had further questions to be directed to the panel. The prosecutor suggested none. He made no effort to determine whether his concerns were real. We are therefore left with the clear indication that the government peremptorily challenged two black jurors because the prosecutor simply presumed from his previous experience all black people would be influenced to acquit the defendant because of the mere presence of Mr. Porter. This is precisely the kind of presumption that will not withstand the Equal Protection Clause test propounded in *Batson*.

REVERSED AND REMANDED for a new trial.

---

**4.** *Contrast United States v. Chalan*, 812 F.2d 1302, 1317 (10th Cir.1987), where we remanded for determination of the reasons for the government's challenge.