Clifford HOWARD, Petitioner–Appellant,

v.

Daniel A. SENKOWSKI, Superintendent
of Clinton Correctional Facility,
Respondent–Appellee.

No. 305, Docket 92–2289.

United States Court of Appeals,
Second Circuit.

Argued Oct. 20, 1992.

Decided Feb. 17, 1993.

Brian P. Schechter, Hempstead, N.Y.
(Matthew Muraskin, Kent V. Moston,
Alfred O'Connor, on the brief), for petition-
er-appellant.

John F. McGlynn, Asst. Dist. Atty., Mi-
neola, N.Y. (Denis Dillon, Dist. Atty., Peter
A. Weinstein, Asst. Dist. Atty., on the
brief), for respondent-appellee.

Before OAKES, NEWMAN, and
MAHONEY, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal presents an issue concerning
the application of the *Batson* rule barring
discriminatory use of peremptory chal-
lenges. *See Batson v. Kentucky*, 476 U.S.
79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
The precise issue is whether in the infre-
quent case where a court finds that race
was a factor in a prosecutor's exercise of
peremptory challenges, the dual motivation
principle applies such that the prosecutor
bears the burden of proof to persuade the
trier that the challenges would have been
exercised for race-neutral reasons even if
race had not been a factor. The issue
arises on an appeal by Clifford Howard
from the April 24, 1992, judgment of the
District Court for the Eastern District of
New York (Thomas C. Platt, Jr., Chief
Judge), dismissing his petition for habeas
corpus to challenge his state court convic-
tion for robbery and related offenses. Be-
cause we conclude that the dual motivation
principle applies to resolution of *Batson*
challenges and was not applied in this case,
we vacate the judgment and remand.

## Facts

Howard, who is Black, was convicted on June 5, 1984, in Nassau County Court of robbery, possession of stolen property, and unauthorized use of a motor vehicle. During jury selection, defense counsel moved for a mistrial on the ground that the prosecutor had used peremptory challenges to strike the only two Black members of the venire. The prosecutor responded only by saying that "neither peremptory challenge was exercised solely on the basis of race." The mistrial motion was denied, and an all-White jury was empaneled. Howard was convicted on all charges.

While Howard's direct appeal to the Appellate Division was pending, the Supreme Court ruled in *Batson* that a prosecutor's use of racially motivated peremptory challenges violated a defendant's right to equal protection of the laws. The Court subsequently held that *Batson* applied retroactively to decisions pending on direct appeal. *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Applying *Batson*, the Appellate Division concluded that Howard had made a *prima facie* showing of discrimination, and remanded the case to the Nassau County Court for an evidentiary hearing on the prosecutor's reasons for striking the two jurors. *People v. Howard*, 128 A.D.2d 804, 513 N.Y.S.2d 506 (2d Dep't 1987).

The hearing was held on May 27–28, 1987, before Judge Jules E. Orenstein, the Judge who had tried the case having retired. The prosecutor, relying on memory and notes taken during *voir dire*, conceded that race had been a factor in his peremptory challenge decisions, but suggested other factors that he claimed had been more significant. His acknowledgment of some reliance on race was explicit:

Q You did state that race was a factor?

A Yes.

Q Race itself was a factor?

A Right.

Q Not simply those jurors taken together, but race was a factor?

A Yes.

Q You did believe their race, the fact that they were black, was bad for your case?

A My feeling was they [*sic*] made them sympathetic to the defendant.

The prosecutor also said that race had not been an "overriding" or a "major" factor.

Endeavoring to articulate race-neutral explanations, the prosecutor said that he had challenged one Black member of the venire, Mrs. DuBose, because her inability, when reading from a chart, to pronounce correctly the word "prejudice" indicated to him that she lacked the educational level and ability he thought necessary to comprehend the State's case. He said that he had challenged the other Black member of the venire, Mrs. Herring, because she had limited work experience; had five children and therefore might be sympathetic to the defendant; had expressed no opinion about mental illness, which might be relevant to one of the trial witnesses; and had no connection with law enforcement, either as a juror in prior cases, as a crime victim, or as a friend of those in law enforcement. The defendant countered that Mrs. DuBose's mispronunciation was not significant and that the reasons proffered for challenging Mrs. Herring were not credible in view of the prosecutor's willingness to accept a White member of the venire with similar characteristics.

The County Court endeavored to resolve the *Batson* challenge by applying the analysis of *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), which the Court specifically cited. *Burdine* outlined the familiar three-part analysis for what is usually called a "pretext" claim: the claimant must present a *prima facie* case sufficient to establish an inference of improper motivation; the party accused of discrimination must then articulate race-neutral reasons for the challenged action; the claimant then bears the ultimate burden of persuasion to show that the articulated reasons are pretextual and that the "real" reason is the impermissible one. *Id.* at 252–53, 101 S.Ct. at 1093; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93

S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). Judge Orenstein found that race had been "part of a totality of factors" for the prosecutor's challenges, that the prosecutor had articulated neutral explanations, and that the explanations were not pretextual. *People v. Howard,* #56387, slip op. at 5 (Nassau Cty. Ct. Nov. 6, 1987). He concluded that there had been "a failure on the part of the defendant to establish purposeful discrimination." *Id.* His ruling was affirmed by the Appellate Division, *People v. Howard,* 143 A.D.2d 943, 533 N.Y.S.2d 404 (2d Dep't 1988), and leave to appeal to the New York Court of Appeals was denied, *People v. Howard,* 73 N.Y.2d 892, 538 N.Y.S.2d 805, 535 N.E.2d 1345 (1989).

Howard then sought habeas corpus relief in the District Court. For reasons similar to those relied on by the state courts, the District Court held that Howard was not entitled to relief under *Batson,* and entered judgment dismissing the petition. Though endorsing Judge Orenstein's fact-finding, which had found Howard to have failed to sustain his burden of showing discriminatory motivation, the District Court analyzed the issue in slightly different terms. Chief Judge Platt said the issue, once a *prima facie* case had been established, was whether "the prosecutor's explanations were sufficiently race-neutral to rebut the *prima facie* showing of discrimination." *Howard v. Senkowski,* No. 90–CV–3735, slip op. at 9 (E.D.N.Y. Apr. 18, 1992).

### Discussion

Howard contends that the prosecutor's admission that race was "a factor" in exercising the peremptory challenges precluded a finding that the prosecutor had articulated a race-neutral explanation. Though we disagree with that precise contention, it serves to pose the underlying issue in this case. The acknowledgment that race was part of the prosecutor's motivation, or even a finding to that effect unaided by an acknowledgment, is not inconsistent with the existence of some other race-neutral explanation for the prosecutor's action. A person may act for more than one reason. Where more than one reason motivates challenged action, the issue is what standards apply in determining whether the action is invalid because of the partially improper motivation.

In the realm of constitutional law, whenever challenged action would be unlawful if improperly motivated, the Supreme Court has made it clear that the challenged action is invalid if motivated in part by an impermissible reason but that the alleged offender is entitled to the defense that it would have taken the same action in the absence of the improper motive. *See Mt. Healthy City School Board of Education v. Doyle,* 429 U.S. 274, 284–87, 97 S.Ct. 568, 574–76, 50 L.Ed.2d 471 (1977); *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 270 n. 21, 97 S.Ct. 555, 566 n. 21, 50 L.Ed.2d 450 (1977).[1] The issue we must decide is whether this so-called "dual motivation" analysis applies to claims of discrimination in the use of peremptory challenges.

We start our inquiry with the Supreme Court's major modern consideration of establishing racial discrimination for equal protection purposes in *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). The Court there ruled that racial discrimination under the Equal Protection Clause requires "a racially discriminatory purpose," *id.* at 239, 96 S.Ct. at 2047, and that a racially "disproportionate impact," *id.* at 246, 96 S.Ct. at 2051, will not suffice.

The Court emphasized the requirement of a racially discriminatory *purpose* the following year in *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. at 264–65, 97 S.Ct. at 562–63. However, in *Arlington Heights,* the Court elaborated upon the ascertainment of discriminatory purpose and stated

---

1. Dual motivation analysis also applies in nonconstitutional contexts. *See, e.g., Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–47, 109 S.Ct. 1775, 1787–88, 104 L.Ed.2d 268 (1989) (Title VII gender discrimination); *NLRB v. Transportation Management Corp.,* 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983) (National Labor Relations Act protections from discharge); *Holo–Krome Co. v. NLRB,* 954 F.2d 108 (2d Cir.1992) (same).

two crucial rules. First, the Court noted that *"Davis* does not require a plaintiff to prove that the challenged action rested solely on racially discriminatory purposes." *Id.* at 265, 97 S.Ct. at 563. Rather, the Court said, the test is whether "a discriminatory purpose has been *a motivating factor* in the decision." *Id.* at 265–66, 97 S.Ct. at 563 (emphasis added). *See Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979) (" 'Discriminatory purpose' . . . implies that the decisionmaker . . . selected a particular course of action *at least in part* 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.") (emphasis added). Second, the Court explained in *Arlington Heights* that if a discriminatory purpose was shown to have motivated a decision in part, the dual motivation analysis of *Mt. Healthy* would be applicable:

> Proof that the decision of the Village was motivated in part by a racially discriminatory purpose would not necessarily have required invalidation of the challenged decision. Such proof would, however, have shifted to the Village the burden of establishing that the same decision would have resulted even had the impermissible purpose not been considered.

*Arlington Heights*, 429 U.S. at 270 n. 21, 97 S.Ct. at 566 n. 21 (citing *Mt. Healthy* ). *See Hunter v. Underwood*, 471 U.S. 222, 228, 105 S.Ct. 1916, 1920, 85 L.Ed.2d 222 (1985) (applying dual motivation analysis to state constitutional provision disenfranchising voters).

Dual motivation analysis, in effect, may supplement so-called "pretext" analysis, which applies to a claimant's "burden of persuading the court that [he or] she has been the victim of intentional discrimina-

tion." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. When the issue is the all-or-nothing question of whether or not an impermissible consideration motivated the challenged action, which was the issue in *Burdine*, pretext analysis employs the familiar three-step approach used by the County Court in this case.[2] Once the claimant has proven improper motivation, dual motivation analysis is available to the person accused of discrimination to avoid liability by showing that the same action would have been taken in the absence of the improper motivation that the claimant has proven. *See Arlington Heights*, 429 U.S. at 270 n. 21, 97 S.Ct. at 566 n. 21; *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576; *Price Waterhouse*, 490 U.S. at 244–47, 109 S.Ct. at 1787–88.

The two forms of analysis are not incompatible. The claimant always has to prove discriminatory motivation. If he succeeds, the accused party has an opportunity to show that there were really two motives and that a permissible motive would have led to the challenged action. In effect, the accused party is permitted to show, if he can, that the improper motivation proved by the claimant was only part, and not the decisive part, of the motivation.

Against this background, the Supreme Court decided *Batson*, ruling that the Equal Protection Clause barred a prosecutor's use of peremptory challenges based on race. Placing the issue squarely within the tradition of equal protection jurisprudence, the Court said, "A recurring question in these [jury discrimination] cases, *as in any case alleging a violation of the Equal Protection Clause*, was whether the defendant had met his burden of proving purposeful discrimination on the part of the State." 476 U.S. at 90, 106 S.Ct. at 1719 (emphasis added) (citations omitted). The

---

**2.** Though pretext analysis was developed in Title VII cases, such as *Burdine* and *McDonnell Douglas*, it is fully applicable to constitutional claims where the issue is whether an improper motive existed, as *Batson* itself demonstrates, 476 U.S. at 98, 106 S.Ct. at 1723. *See United States v. Alvarado*, 891 F.2d 439, 442 (2d Cir.1989) (pretext analysis applied to *Batson* claim), *vacated on other grounds*, 497 U.S. 543, 110 S.Ct. 2995, 111 L.Ed.2d 439 (1990). *Washington v. Davis*

distinguished Title VII standards from equal protection standards only to the extent of ruling that disparate impact analysis, permitted to establish a Title VII violation, would not suffice for an equal protection violation. 426 U.S. at 238–39, 96 S.Ct. at 2046–47. Nothing in *Davis* or subsequent constitutional decisions lessens the relevance of pretext analysis to equal protection cases.

Court, citing *Burdine, see id.* at 98 n. 20, 106 S.Ct. at 1724 n. 20, applied pretext analysis, requiring the defendant to present a *prima facie* case of discriminatory use of peremptory challenges, *id.* at 96–97, 106 S.Ct. at 1722–23, then requiring the prosecutor "to come forward with a neutral explanation for challenging black jurors," *id.* at 97, 106 S.Ct. at 1723, and finally recognizing the defendant's ultimate burden of persuasion by concluding that "[t]he trial court then will have the duty to determine if the defendant has established purposeful discrimination," *id.* at 98, 106 S.Ct. at 1724. Since the trial court had made no inquiry concerning purposeful discrimination in the prosecutor's use of peremptory challenges, the Court had no occasion to decide whether dual motivation analysis would be applicable if the prosecutor were shown to have relied on race as part of his motivation.

Since dual motivation analysis was explicitly invoked by the Supreme Court in the context of determining racial motivation for purposes of adjudicating a challenge under the Equal Protection Clause, *see Arlington Heights,* 429 U.S. at 270 n. 21, 97 S.Ct. at 566 n. 21, and since *Batson* equated jury discrimination claims with "any case alleging a violation of the Equal Protection Clause," *Batson,* 476 U.S. at 90, 106 S.Ct. at 1719, one might have thought there would be no question but that such analysis applies to an equal protection challenge based on racial motivation in any context, including the context of peremptory jury challenges. However, some doubt arises from the Supreme Court's statement in *Batson* that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Id.* at 89, 106 S.Ct. at 1719. The question is whether the Court intended the adverb "solely" to alter its prior equal protection jurisprudence such that the dual motivation analysis explicitly invoked in *Arlington Heights* would be inapplicable to *Batson* challenges.

For several reasons, we do not believe the Court intended such a result. In the first place, it is always hazardous to seize upon a single word or phrase in a judicial opinion and build upon it a rule that was not in issue in the case being decided. *Batson* presented the Court with no issue as to whether racial motivation needed to be the sole basis for a peremptory challenge in order to disallow the challenge. The issue presented was whether the claimant's *prima facie* case of discrimination could be established by circumstances drawn from the pending criminal case or could be established only by a persistent pattern of discrimination, as had previously been required by *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). *Batson* permitted the criminal defendant to "establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges *at the defendant's trial." Batson,* 476 U.S. at 96, 106 S.Ct. at 1723 (emphasis added). The Court was not called upon to determine what analysis would be applicable if it were shown that race played a part in the prosecutor's motivation.

Since the Court could reasonably anticipate that prosecutors, called upon to explain peremptory challenges alleged to be racially motivated, would normally dispute a claim of racial motivation, the Court understandably outlined pretext analysis, appropriate for cases where improper motivation is totally disputed, and had no occasion to discuss dual motivation analysis, appropriate for the relatively infrequent cases where improper purpose is shown to be part of the prosecutor's motivation. Contemplating an all-or-nothing dispute as to improper motivation, the Court wrote the one sentence prohibiting a prosecutor from challenging potential jurors "solely" on account of their race. Other opinions that have repeated the "solely" phrasing have done so only in the context of an all-or-nothing dispute as to whether improper motivation existed at all. *See Hernandez v. New York,* —— U.S. ——, ——, 111 S.Ct. 1859, 1874, 114 L.Ed.2d 395 (1991) (O'Connor, J., with whom Scalia, J., joins, concur-

ring); *United States v. Stavroulakis*, 952 F.2d 686, 696 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 1982, 118 L.Ed.2d 580 (1992); *Davis v. Lansing*, 851 F.2d 72, 73 (2d Cir.1988); *Roman v. Abrams*, 822 F.2d 214, 229 (2d Cir.1987), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1311, 103 L.Ed.2d 580 (1989).

Second, other language in *Batson* and in the peremptory challenge cases that have extended its holding phrased the motivation standard in traditional terms, without the qualifying adverb "solely." For example, in *Batson* the Court said that once a prosecutor articulates a neutral explanation, the trial court will have to determine "if the defendant has established purposeful discrimination," 476 U.S. at 98, 106 S.Ct. at 1724, and that "[t]he standard we adopt under the Federal Constitution is designed to ensure that a State does not use peremptory challenges to strike any black juror because of his race," *id.* at 99 n. 22, 106 S.Ct. at 1724 n. 22. In *Powers v. Ohio,* —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), extending *Batson* to cases where the challenged members of the venire and the defendant were of different races, the Court referred to "race-based exclusions," *id.,* 111 at 1366, "a jury whose members are selected by nondiscriminatory criteria," *id.,* 111 S.Ct. at 1367, use of challenges "for the purpose of excluding members of the defendant's race," *id.,* 111 S.Ct. at 1368, and exclusion of a community member "on account of his or her race," *id.,* 111 S.Ct. at 1369. The one sentence in *Powers* that included the adverb "solely" is followed in the same paragraph by the traditional formulation barring exclusion "on account of race." *Id.,* 111 S.Ct. at 1370.

Similarly, in *Edmonson v. Leesville Concrete Co.,* —— U.S. ——, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), extending *Batson* to civil cases, the Court's language used traditional formulations such as "race-based exclusion," *id.,* 111 S.Ct. at 2080, and "exclusion on account of race," *id.,* 111 S.Ct. at 2087. And in *Georgia v. McCollum,* —— U.S. ——, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), extending *Batson* to peremptory challenges exercised by defendants, the Court continued to use traditional formulations such as discrimination against jurors "on account of race," *id.,* 112 S.Ct. at 2359, and peremptory challenges "based on either the race of the juror or the racial stereotypes held by the party," *id.*

Third, *Batson* explicitly relied on the Court's prior equal protection jurisprudence as articulated in cases such as *Davis* and *Arlington Heights, see Batson,* 476 U.S. at 94, 95, 106 S.Ct. at 1721, 1722. It is highly unlikely that the Court would invoke cases specifically recognizing the vice of an impermissible reason forming *part* of a motivation and simultaneously and without discussion shift to a requirement of *sole* motivation. That is far more weight than an isolated adverb can bear. Perhaps the best evidence that the Court intended no such drastic curtailment of its equal protection jurisprudence is the Court's explicit reliance in a subsequent peremptory challenge case, *Hernandez v. New York,* —— U.S. ——, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), on the passage from *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. at 279, 99 S.Ct. at 2296, equating discriminatory purpose with motivation that is "at least in part" improper. *Hernandez,* —— U.S. at ——, 111 S.Ct. at 1866.

Fourth, *Powers* makes the significant point that the Fourteenth Amendment's mandate of eliminating official racial discrimination is "most compelling" in the judicial system. *Powers,* —— U.S. at ——, 111 S.Ct. at 1373. It is unlikely that in this "most compelling" context, the Court intended to invoke a standard more onerous for claimants than that applicable in other equal protection contexts.

Finally, the decisions evolving *Batson* requirements recognize the role that remains for lower courts to work out the mechanics for implementing these requirements. *See Edmonson,* —— U.S. at ——, 111 S.Ct. at 2089 ("[W]e leave it to the trial courts in the first instance to develop evidentiary rules for implementing our decision.");

*Powers,* —— U.S. at ——, 111 S.Ct. at 1374 ("It remains for the trial courts to develop rules, without unnecessary disruption of the jury selection process, to permit legitimate and well-founded objections to the use of peremptory challenges as a mask for race prejudice."). Thus, even if the partial motivation standard and the consequent dual motivation analysis of *Arlington Heights* had not been cited by *Batson,* it would have been appropriate for the lower courts to apply these approaches in implementing *Batson* requirements.

■ For all of these reasons, we conclude that *Batson* challenges may be brought by defendants who can show that racial discrimination was a substantial part of the motivation for a prosecutor's peremptory challenges, leaving to the prosecutor the affirmative defense of showing that the same challenges would have been exercised for race-neutral reasons in the absence of such partially improper motivation.[3] In concluding that dual motivation analysis applies to a *Batson* challenge, we do no more than apply that analysis precisely as previously enunciated by the Supreme Court in prior dual motivation cases such as *Arlington Heights* and *Price Waterhouse.*

■ Applying that approach to the pending case, we further conclude that Howard's *Batson* challenge has not yet been properly adjudicated. Judge Orenstein's ruling in the County Court found that race was a part of the prosecutor's motivation, as the prosecutor had candidly acknowledged, yet applied the pretext analysis of *Burdine* and concluded that Howard had not sustained his burden of showing purposeful discrimination. However, once the prosecutor's partially improper motivation had been established, Howard was entitled to prevail unless, under dual motivation analysis, the prosecutor could sustain *his* burden of showing that he would have exercised his challenges solely for race-neutral reasons. Neither Judge Orenstein nor Chief Judge Platt in the District Court imposed that burden upon the prosecutor.

Under the circumstances, we will remand the matter to the District Court and leave to the District Judge the decision whether to apply dual motivation analysis on the current record or such expanded record as he deems appropriate, or to return the matter, through the device of a conditional writ, to the state court so that the proper analysis may be made there.[4] We intimate no view as to the ultimate disposition of Howard's claim under dual motivation analysis. That is a factual matter for a trial court. *Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21; *Hernandez,* —— U.S. at ——, 111 S.Ct. at 1868–71; *United States v. Biaggi,* 853 F.2d 89, 96 (2d Cir.1988), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989). It suffices to note that in close cases, the allocation of the burden of proof can affect the outcome, and that once the prosecutor's improper motivation was established at least in part, there was a fair issue as to whether the State could sustain its burden of showing

---

3. Though no prior decision in our Circuit has had occasion to determine whether dual motivation analysis applies to a *Batson* claim, we are satisfied that our conclusion is not a "new rule" within the meaning of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). As the foregoing discussion indicates, the Supreme Court has placed its *Batson* decision within its traditional equal protection jurisprudence, *Batson,* 476 U.S. at 90, 106 S.Ct. at 1719, and it has previously indicated that dual motivation analysis is an integral component of that jurisprudence, *Arlington Heights,* 429 U.S. at 270 n. 21, 97 S.Ct. at 566 n. 21. We have thus " 'simply applied a well-established constitutional principle to govern a case which is closely analogous to those which have been previously considered in the prior case law.' " *Yates v. Aiken,* 484 U.S.

211, 216, 108 S.Ct. 534, 537, 98 L.Ed.2d 546 (1988) (quoting *Desist v. United States,* 394 U.S. 244, 263, 89 S.Ct. 1030, 1041, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting)).

4. *Compare Raley v. Parke,* 945 F.2d 137, 142–43 (6th Cir.1991) (conditional writ used to afford state court further opportunity to consider voluntariness of plea), *with Carter v. McCarthy,* 806 F.2d 1373, 1377 (9th Cir.1986) (remand to state court to consider voluntariness of plea not warranted), *cert. denied,* 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987). *See also Smith v. Atkins,* 678 F.2d 883, 885 (10th Cir.1982) (District Court given discretion to hold hearing or remand to state court where state court findings are lacking).

that the proffered race-neutral reasons alone would have resulted in the challenge of the only two Black members of the venire.

The cynical might suggest that prosecutors will take from our ruling a message of caution not to acknowledge that race was a factor in their use of peremptory challenges even in those instances when it was. We totally reject such a view. In the first place, we are unwilling to accept the premise of this argument that prosecutors will readily disregard the obligations of their office and violate the requirements of an oath by swearing false denials of racial motivation. Second, we have every confidence that trial judges can be relied upon to determine the true facts of the prosecutor's motive, just as they are relied upon to determine subjective mental states of parties and witnesses in all manner of cases. Third, the determination that race was a factor in a prosecutor's use of peremptory challenges is not dependent on a prosecutor's acknowledgment. As with all other inquiries concerning mental state, the ultimate determination is an inference from all the pertinent circumstances, whether or not an acknowledgment occurs. Finally, we think it not amiss to observe that in those instances where race was a factor in a prosecutor's motivation, not only will a false denial risk detection and serious consequences, but a frank acknowledgment may bolster the prosecutor's credibility in the assertion of other race-neutral factors. In this case, for example, Judge Orenstein stated:

> [The prosecutor's] candid admission that race was a factor, although a minor one, in his exercise of the peremptory challenges which are the subject of this hearing, is a further indication to this Court of the overall credibility of his testimony.

*People v. Howard,* #56387, slip op. at 4 (Nassau Cty.Ct. Nov. 6, 1987). Simply because fact-finding on an issue of mental state like motivation is difficult is no reason to alter the normal approach to fact-finding nor to diminish confidence in the force of a witness's oath or in a trier's ability to ascertain facts.

## Conclusion

Because dual motivation analysis was not applied once race was found to have been part of the prosecutor's motivation for exercising peremptory challenges, the judgment is vacated and remanded for further proceedings consistent with this opinion.